IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. BRIAN SKINNER, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>1. FARMERS UNION HOSPITAL ASSOCIATION d/b/a GREAT PLAINS REGIONAL MEDICAL CENTER,<br><br>    Defendants. | Case No.: CIV-24-1342-JD |

**DEFENDANT FARMERS UNION HOSPITAL ASSOCIATION D/B/A GREAT PLAINS REGIONAL MEDICAL CENTER'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**

Defendant Farmers Union Hospital Association, doing business as Great Plains Regional Medical Center ("Defendant" or "Great Plains"), by undersigned counsel, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, hereby provides notice of removal of this action filed by Plaintiff Brian Skinner ("Plaintiff") from the District Court of Beckham County, State of Oklahoma, Case No. CJ-24-124, to the United States District Court for the Western District of Oklahoma. In support of this Notice of Removal, Great Plains states as follows:

**JURISDICTION**

1. This Court may exercise original subject matter jurisdiction over this civil action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

2. This Court is the judicial district and division embracing the place where Plaintiff filed suit and where it is pending. 28 U.S.C. § 116. Thus, this Court is the proper district court to which the case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

## THE ACTION AND TIMELINESS OF REMOVAL

3. On November 26, 2024, Plaintiff, on behalf of himself and, purportedly, on behalf of all others similarly situated filed his Class Action Petition ("Petition") against Great Plains in the District Court of Beckham County, Oklahoma, styled *Brian Skinner, individually and on behalf of all others similarly situated, v. Farmers Union Hospital Association d/b/a Great Plains Regional Medical Center*, Case No. CJ-24-124 (the "State Court Action"). *See* **Exhibit 1**, State Court Docket Sheet (attached pursuant to LCvR81.2(a)).

4. The Petition contains class action allegations pursuant to 12 Oklahoma Statute § 2023. **Exhibit 2**, Petition, ¶¶ 80–87. It also contains claims under Oklahoma law for (1) negligence; (2) unjust enrichment; (3) breach of implied contract; (4) breach of fiduciary duty; and (5) declaratory/injunctive relief. *Id.* at ¶¶ 88–166. The Petition's "PRAYER FOR RELIEF" seeks an order certifying a class; money damages, including actual damages, restitution, attorney fees, expenses, and costs; significant injunctive relief; class notice administration expenses; interest; and such other and further relief as the Court deems proper. *Id.* at pp. 30–32.

5. Plaintiff served the Petition and summons upon Great Plains on December 3, 2024. Ex. 2, **Exhibit 3**, Summons. While other documents have been filed in the State

Court Action, they have not been served. Notwithstanding, all process, pleadings, and orders that have been filed in the State Court Action are attached to this Notice of Removal. *See* Exs. 2, 3; *see also* **Exhibit 4**, Motion to Consolidate, **Exhibit 5**, Notice of Hearing.

6. This removal is timely because Great Plains filed this Notice of Removal within thirty (30) days of Plaintiff's service upon it. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service of removable complaint); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 56 U.S. 344, 348 (1999) (time period for removal begins when defendant is served with removable complaint).

## CAFA JURISDICTION

7. Basis of Original Jurisdiction. This Court has original jurisdiction over this action under CAFA. Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, and any member of the putative class is a citizen of a different state than that of the defendant. 28 U.S.C. § 1332(d)(1)–(2)(A); *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1243 (10th Cir. 2009) (*per curiam*).

8. As set forth below, pursuant to 28 U.S.C. § 1332(d), Great Plains may remove the State Court Action to federal court because: (1) this action is pleaded as a class action; (2) the putative class includes more than one hundred (100) members; (3) "minimal diversity" exists, *i.e.*, at least one member of the putative class is a citizen of a state different than Great Plains' state of citizenship; and (4) the matter in controversy, in the aggregate,

exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See Coffey*, 581 F.3d at 1243.

## THE STATE COURT ACTION IS PLED AS A CLASS ACTION.

9.      CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

10.     Plaintiff alleges an action under 12 Oklahoma Statute § 2023. Ex. 2, ¶¶ 80–87. Because 12 Oklahoma Statute § 2023 is a class action statute, the first CAFA element is satisfied. *Morehead v. State*, 415 P.3d 556, 564 n. 7 (Okla. Civ. App. 2017) (Referencing 12 O.S. § 2023, stating that Oklahoma's class action scheme closely parallels that provided in Federal Rule of Civil Procedure 23).

## THE PUTATIVE CLASS INCLUDES AT LEAST ONE HUNDRED MEMBERS

11.     Plaintiff alleges that he brought this lawsuit against Great Plains "to hold Defendant responsible for the harms it caused Plaintiff and similarly situated persons in the preventable data breach . . . ." Ex. 2, ¶ 1. He alleges that his "personal information [was] accessed by cybercriminals" in a data incident alongside 133,149 other individuals (the "Data Incident"). *Id.* at ¶ 2.

12.     Plaintiff defines the putative class as "[a]ll persons residing in the United States whose personal information was compromised during the [Data Incident]." *Id.* at ¶

81. Plaintiff further alleges that the "proposed Class is believed to be so numerous that joinder of all members is impracticable." *Id.* at ¶ 83.

13. Therefore, as pled by Plaintiff, the putative class includes more than the statutorily required minimum of 100 members.

### **"MINIMAL DIVERSITY" OF CITIZENSHIP EXISTS**

14. Pursuant to 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant." *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014).

15. <u>Plaintiff's Citizenship.</u> For diversity purposes, an individual is a "citizen" in the state in which he or she is domiciled. *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014). "[A] person acquires domicile in a state when the person resides there and intends to remain there indefinitely . . . ." *Id.* at 1200. "[T]he place of residence is *prima facie* the domicile." *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). But, "allegations of mere 'residence' may not be equated with 'citizenship.'" *Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972); *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("'Domicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another." (citation omitted)). Plaintiff alleges that he "is a citizen and resident of Washita County, Oklahoma." Ex. 2, ¶ 14. Accordingly, Plaintiff is an Oklahoma citizen for diversity jurisdiction purposes.

- 5 -
NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

16. <u>Putative Class Members' Citizenship.</u> Plaintiff seeks to represent a class broadly defined as "[a]ll persons residing in the United States whose personal information was compromised during the [Data Incident]." *Id.* at ¶ 81.

17. Under CAFA, if minimal diversity exists at the time suit was removed, federal jurisdiction cannot later be divested. *Grupo Dataflux v. Atlas Global Grp, L.P.*, 541 U.S. 567, 570–71 (May 17, 2004) (calling this rule "hornbook law"); *see also* S. Rep. 109-14, S. Rep. No. 14, 109th Cong. 1st Sess. 2005, 2005 WL 627977, *70–71 (Feb. 28, 2005) (jurisdiction cannot be divested by a later event, "whether beyond the plaintiff's control or the result of his own volition."). Here, Plaintiff's Petition does not limit its class to Oklahoma citizens but instead contemplates a nationwide class. Ex. 2, ¶ 81.

18. Using residential addresses within patient records, Great Plains sent thousands of Data Incident notices to 51 non-Oklahoma jurisdictions and overseas armed forces addresses. *State Farm*, 19 F.3d at 520 (residential addresses can be prima facie domicile); *but see Reece v. AES*, 638 Fed. Appx. 755, 769 (10th Cir. 2016) (citing *In re Sprint Nextel Corp.*, 593 F.3d 669, 674 (7th Cir. 2010) ("[A] court may not draw conclusions about the citizenship of class members based on things like their phone numbers and mailing addresses.")); *see, e.g.*, *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 798 (5th Cir. 2007) ("medical records alone show mere presence in the state" and are not tantamount to domicile/citizenship).

19. Therefore, prima facie evidence exists that, at the time of removal, at least one of the notified addressees across those 51 non-Oklahoma jurisdictions includes a non-Oklahoma citizen.

20. <u>Great Plains' Citizenship</u>. Under 28 U.S.C. §§ 1332 and 1453, corporations and unincorporated associations are deemed to be a citizen of the State where they have their principal place of business and the State under whose laws they are organized. 28 U.S.C. § 1332(d)(10); *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (principal place of business is "where the corporation's high level officers direct, control, and coordinate the corporation's activities."). Under the relevant statutes and case law, Great Plains is an Oklahoma citizen.

21. Because at least one of the putative class members is a citizen of a state other than Great Plains' state of citizenship, "minimal diversity" is established under CAFA. *See Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 84–85.

**THE AMOUNT IN CONTROVERSY EXCEEDS THE CAFA THRESHOLD[1]**

22. CAFA requires the removing defendant to prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied when a complaint does not allege a specific amount of damages. 28 U.S.C. § 1446(c)(2)(B); *Dart Cherokee Basin*

---

[1] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiff or the putative class members can state or have stated a claim or that they are entitled to damages in any amount. Great Plains denies liability, denies Plaintiff and/or the class members are entitled to recover any amount, and denies that a class can be properly certified in this matter.

*Operating Co., LLC*, 574 U.S. at 90 ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement.). "The defendant is thus entitled to present its own estimate of the stakes; it is not bound by the plaintiff's estimate in the complaint." *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247 (10th Cir. 2012). And, the defendant's exposure in any given suit should be aggregated across the class. 28 U.S.C. § 1332(d)(6).

23. Once the removing party establishes that the jurisdictional minimum is met, the opposing party must show to a legal certainty that the amount recoverable does not meet that threshold. *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008) ("Only if it is "legally certain" that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed." (internal quotations and citations omitted)).

24. Plaintiff's Petition makes it more likely than not that the amount in controversy here exceeds $5,000,000.

25. Oklahoma law requires that a plaintiff shall plead that the "amount sought as damages is in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code" or, when the amount sought is less than the amount required for diversity, "shall specify the amount of such damages sought to be recovered." 12 O.S. § 2008(A)(2). Plaintiff's Petition states neither that the amount is in excess of the amount required for diversity jurisdiction nor a specific amount below the

amount required for diversity jurisdiction. *Id.*; *cf.* Ex. 2, pp. 30–32 (failing to indicate amount sought). The Court can infer that the amount in controversy under Section 1332, Title 28, United States Code is met by Plaintiff's silence on the sum sought in the State Court Action.

26. <u>Allegations of Personal Information Value.</u> Plaintiff's alleged purpose for bringing this lawsuit against Great Plains is to "hold Defendant responsible for the harms it caused Plaintiff" in connection with the Data Incident. Ex. 2, ¶ 1. Plaintiff alleges that he suffered "damages to and/or diminution in value of [his] Personal Information . . ." in the Data Incident. *Id.* at ¶ 34. And, in paragraph 49, Plaintiff alleges that "Personal Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it . . . for years." *Id.* Finally, Plaintiff alleges that personal information demands a "high[] price on the black market" and cites an article for this proposition. *Id.* at ¶ 51, fn. 15. The author of that article notes that "[a] complete identity-theft kit containing comprehensive health insurance credential can be worth hundreds of dollars . . . ." *Anthem hack: Personal data stolen sells for 10X price of stolen credit card numbers*, NetworkWorld, available at: https://www.networkworld.com/article/935334/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited: Dec. 17, 2024). Taking Plaintiff's own allegations at face value and applying them to the putative class size, damages could amount to $13,314,900.00 (multiplying $100.00 against 133,149 individuals), as alleged by Plaintiff.

27.     Allegations Regarding Credit Monitoring. Plaintiff seeks damages for herself and the putative class for "out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the" Data Incident. *E.g.*, *id.* at ¶ 157. Said differently, Plaintiff seeks credit monitoring on behalf of himself and the class. Three main identity-protection agencies—IDShield,[2] Equifax,[3] and Experian[4]—advertise monthly rates for credit-monitoring services ranging from $14.95 to $19.99 per person per month. For example, IDShield Individual offers one-bureau credit monitoring with an unlimited service guarantee, dark web internet monitoring, data breach notifications, full-service restoration when theft occurs, and 24/7 assistance, among other services, for $14.95 per month for one individual. Similarly, both Equifax and Experian offer products that provide 3-Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $19.99 a month, respectively. For example, multiplying the cost of reimbursing just one month of credit-monitoring services at $14.95 per month (the cheapest of the three products) by 133,149 putative class members is $1,990,577.55. A year of credit-monitoring services would alone satisfy the jurisdictional minimum.

---

[2] *See IDShield Plans & Pricing*, https://idshield.com/#plans (last visited: Dec. 12, 2024); *see also IDShield Individual*, https://checkout.idshield.com/?plan=IDSI&freetrial=true&region=OK (last visited: Dec. 12, 2024).
[3] *See Equifax*, https://www.equifax.com/equifaxcomplete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=50235599488 (last visited: Dec. 12, 2024).
[4] *See Eperian CreditLock*, https://www.experian.com/lp/creditlock.html?bcd=ad_c_sem_427_515842009606&k_id (last visited: Dec. 12, 2024).

28.     Injunctive Relief. Plaintiff seeks significant injunctive relief in his lawsuit. Ex. 2, pp. 29–32. "In actions seeking . . . injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). Here, Plaintiff asks the Court to obligate Defendant to "engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors . . . ." The most prevalent form of security audit available in the United States today is the SOC 2 Type 2 annual evaluation. These audits can cost up to $100,000 per year depending on the size of the organization. *See* DRATA, *Budgeting for SOC 2*, https://drata.com/grc-central/soc-2/how-much-does-a-soc-2-audit-cost (last visited: Dec. 11, 2024). And, because Plaintiff places no time limitation on his request for court-ordered implementation of security audits, we can assume that he hopes for indefinite auditing. Taking 10 years of SOC 2 Type 2 annual evaluations, the measure of this injunctive relief could equal $1,000,000.00.

29.     Class Action Administration Costs. Plaintiff also seeks an "order requiring Defendant to pay the costs involved in notifying the Class members about the judgment and administering the claims process . . . ." Ex. 2, p. 32. Generally speaking, class notice is not taxable to a defendant but is instead the plaintiff's "burden of financing his own suit." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356–57 (1978); *cf. Taniguchi v. Kan*

*Pacific Saipan, Ltd.*, 566 U.S. 560, 572–73 (2012) (noting that although "costs" have an everyday meaning, the concept of taxable costs is limited and stating "[t]axable costs are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators."). As such, Plaintiff's demand for an order requiring Great Plains to pay sums associated with class action administration stands over and above the excludable costs set out in the jurisdictional amount necessary to satisfy CAFA. The claims process in settlement or otherwise requires notice to putative class members. Fed. R. Civ. P. 23(c). Rule 23(c)(2)(B) provides that notice may be given by "United States mail." *Id.* The United States Supreme Court has consistently endorsed notice by first-class mail. *Fager v. CenturyLink Comms, LLC*, 854 F.3d 1167, 1173 (10th Cir. 2016) (collecting cases). Notice by mail is paid at $0.73 per postcard. Here, multiplying Plaintiff's alleged impacted individuals (133,149) by $0.73 (postage rate), mailing notices alone could cost $97,198.77. This does not include the hundreds of thousands of dollars associated with data standardization, CAFA notice to state attorneys general, website setup, call center management, and claims processing and support.

30. Accordingly, because this case was pled as a class action with requisite minimal diversity, class size, and the amount in controversy could exceed $5,000,000.00, removal under CAFA is proper. This case can be removed to this Court.

### NO EXCEPTIONS APPLY TO THIS CAFA REMOVAL

31. No exceptions to CAFA can divest this Court of jurisdiction. "CAFA places the burden on removing parties to establish that its basic requirements are met. However,

once a defendant establishes removal is proper, a party seeking remand to the state court bears the burden of showing jurisdiction in federal court is improper under one of CAFA's exclusionary provisions." *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1262 (10th Cir. Nov. 10, 2014).

32. Here, neither the "local controversy" exception nor the "home state controversy" exception work to deny subject matter jurisdiction.

33. <u>Local Controversy Exception.</u> "The local-controversy provision is a narrow exception that was carefully drafted to ensure that it does not become a jurisdictional loophole and all doubts [are] resolved in favor of exercising jurisdiction over the case." *Reece*, 638 Fed. Appx. at 767–68 (internal citations, quotations, alterations omitted).

34. Invoking the local controversy exception requires Plaintiff to prove, among other things, that "no other class action asserting the same or similar allegations against any of the defendants" has been filed in the preceding three years. 28 U.S.C. § 1332(d)(4)(A). The "other class action" clause has been interpreted to mean any other class action, state or federal, brought against any of the defendants included in the removed action. *See, e.g.*, *Lafalier v. State Farm Fire and Cas. Co.*, 391 Fed. Appx. 732, 738 (10th Cir. 2010). As explained by the Third Circuit,

> In short, Congress wanted to ensure that defendants did not face copycat, or near copycat, suits in multiple forums and hence excluded from the local controversy exception cases where a defendant was named in multiple similar cases. It follows that the "no other class action" factor must not be read too narrowly. **The inquiry is whether similar factual allegations have been made against the defendant in multiple class actions—and hence they are facing separate, distinct lawsuits—without regard to the**

**procedural posture of the earlier filed cases or whether the putative classes in the cases overlap, their claims arise from an identical event, or involve the same causes of action or legal theories**."

*Vodenichar v. Halcon Energy Properties, Inc.*, 733 F.3d 497, 508 –09 (3d Cir. 2013) (emphasis added); *Reece*, 638 Fed. Appx. at 768 (citing *Vodenichar*). When "a controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that this exception is intended to address." S. Rep. 109-14, at *40–41.

35.     Five days before the State Court Action was filed, on November 21, 2024, another related action, styled *Robert McBrayer v. Farmers Union Hospital Association d/b/a Great Plains Regional Medical Center*, Case No.: CJ-24-118, was filed in the District Court of Beckham County, State of Oklahoma, against Great Plains arising out of the same facts set out in the Petition. On November 22, 2024, a second related action, styled *Jake Vanspyker v. Farmers Union Hospital Association d/b/a Great Plains Regional Medical Center*, Case No.: CJ-24-121, was filed in the District Court of Beckham County, State of Oklahoma, against Great Plains arising out of the same facts set out in the Petition.  On November 22, 2024, a third related action, styled *Jennifer McAtte v. Farmers Union Hospital Association d/b/a Great Plains Regional Medical Center*, Case No.: CJ-24-122, was filed in the District Court of Beckham County, State of Oklahoma, against Great Plains arising out of the same facts set out in the Petition. On November 22, 2024, a fourth related action, styled *Christopher Evans v. Farmers Union Hospital Association d/b/a Great Plains Regional Medical Center*, Case No.: CJ-24-123, was filed in the District Court of Beckham County, State of Oklahoma, against Great Plains arising out of the same facts set

out in the Petition. On December 9, 2024, a fifth related action, styled *Christopher Andrade v. Farmers Union Hospital Association d/b/a Great Plains Regional Medical Center*, Case No.: CJ-24-133, was filed in the District Court of Beckham County, State of Oklahoma, against Great Plains arising out of the same facts set out in the Petition. On December 13, 2024, a sixth related action, styled *Madison Baldwin v. Farmers Union Hospital Association d/b/a Great Plains Regional Medical Center*, Case No.: CJ-24-134, was filed in the District Court of Beckham County, State of Oklahoma, against Great Plains arising out of the same facts set out in the Petition. Great Plains is removing these actions to this Court contemporaneously with this removal. The Petitions for these related actions are attached as **Exhibit 6**.

36. There can be no dispute that similar factual allegations have been made against Great Plains in seven, separate class action lawsuits. The "local controversy" exception does not apply.

37. <u>Home State Exception.</u> The home state exception requires the invoking party to first establish that the citizenship of the members of two-thirds or more of the identified persons is in Oklahoma. 28 U.S.C. § 1332(d)(4). Plaintiffs bear the burden of proving the application of this exception by a preponderance of the evidence. *Nutraceutical Corp. v. Von Eschenbach*, 459 F.3d 1033, 1040 (10th Cir. 2006) ("The preponderance of the evidence standard requires the party with the burden of proof to support its position with the greater weight of the evidence.").

38. As noted above, Great Plains sent thousands of notices of the Data Incident to 51 non-Oklahoma jurisdictions. It is impossible to determine which of these individual addressees resides in Oklahoma with an intent to remain there. Furthermore, in *Reece*, the panel discussing the home state exception noted that allegations supporting the exception must be accompanied by "some persuasive substantive evidence (extrinsic to the [Petition]) to establish the requisite citizenship of the class members." 638 Fed. Appx. at 769 (internal alterations omitted).

39. This is especially true here considering Great Plains' location and health care services. Great Plains sits on the western edge of Oklahoma and is less than three miles from Interstate 40. This section of highway runs 331 miles across the state of Oklahoma from Texas to Arkansas. It is a major thoroughfare for interstate commerce. And, for visitors passing through Oklahoma in need of emergency care, Great Plains is one of the only options on the western side of Oklahoma.

40. Further, Great Plains is a public, not-for-profit healthcare system, which means that it readily provides care to low-income, indigent, uninsured, and transient populations. According to Great Plains' 2022 Community Health Needs Assessment, 17% of its patient population was uninsured. GPRMC, *Community Health Needs Assessment Summary*, https://gprmc-ok.com/wp-content/uploads/2022/05/Elk-City-2022-CHNA.pdf (last visited: Dec. 11, 2024). These same populations include those individuals that might provide a temporary address when receiving care or who otherwise have no intent to remain in Oklahoma despite receiving healthcare there.

41. Great Plains also provides robust specialty care for which patients travel into Oklahoma. GPRMC, *Specialties and Services*, https://gprmc-ok.com/services/ (last visited: Dec. 11, 2024).

42. The foregoing facts indicate either that it is more likely than not that less than two-thirds of the putative class are Oklahoma citizens or that there is no way for Plaintiff to meet his evidentiary burden of proving the citizenship of at least one third of the putative class.

43. Plaintiff cannot show, let alone demonstrate, that this exception applies without widespread depositions of over one hundred thousand people. The only record available to either Great Plains or Plaintiff would be the addresses used by Great Plains to notify individuals that their information may have been impacted in the Data Incident. But the Tenth Circuit instructs that a court should not draw conclusions about the citizenship of class members based on mailing addresses. *Reece*, 638 Fed. Appx. at 769 (citing *In re Sprint Nextel Corp.*, 593 F.3d at 674 ("[A] court may not draw conclusions about the citizenship of class members based on things like their phone numbers and mailing addresses.")).

44. No feasible means exists to prove by a preponderance of the evidence that two-thirds or more of the class reside and intend to remain in Oklahoma. The home state exception does not apply.

45. Resolving all doubts in favor of CAFA jurisdiction, neither the local controversy exception nor the home state exception applies to this removal. Accordingly, Great Plains may remove this matter to this Court.

## NOTICE

46. As required by 28 U.S.C. § 1446(d), Great Plains is providing written notice of the filing of this Notice of Removal to Plaintiff; is filing a copy of the Notice of Removal with the clerk of the State Court Action, which will provide notice to all entered counsel; and is further mailing a copy of the Notice of Removal, certified, return receipt requested, to Plaintiff's counsel.

## RESERVATION OF RIGHTS AND DENIAL OF LIABILITY

47. Nothing in this Notice of Removal is intended to be, or should be construed as, an express or implied admission by Great Plains of any fact alleged by Plaintiff; of the validity or merit of any of Plaintiff's claims and allegations; or as a limitation of any of Great Plains' rights, claims, remedies, and defenses in connection with this action.

WHEREFORE, Defendant Farmers Union Hospital Association, doing business as Great Plains Regional Medical Center, prays that this Notice of Removal be deemed good and sufficient, and that Plaintiff's Petition be removed from the District Court of Beckham County, State of Oklahoma to the United States District Court for the Western District of Oklahoma. Defendant further prays that this Court accept jurisdiction of this action and that it be placed on this Court's docket for further proceedings as though it had originated in this Court and that the Court issue all necessary orders.

Dated:   December 20, 2024     Respectfully submitted,

**FOLIART, HUFF, OTTAWAY & BOTTOM**

By: */s/Larry D. Ottaway*
Larry Ottaway-OBA# 6816
James B. Hulin-OBA# 36157
201 Robert S. Kerr Ave., 12th Floor
Oklahoma City, OK 73102
Tel:   405.232.4633
Emails: larryottaway@oklahomacounsel.com
            jakehulin@oklahomacounsel.com


**BAKER & HOSTETLER LLP**

Lisa Houssiere (*Admission Forthcoming*)
811 Main Street, Suite 1100
Houston, Texas 77002
Tel: 713.616.1318
Fax: 713.751.1717
Email: lhoussiere@bakerlaw.com

Jon Maddalone (*Admission Forthcoming)*
1050 Connecticut Avenue N.W. Suite 1100
Washington, DC 20036
Tel: 202.861.1500
Fax: 202.861.1783
Email: jmaddalone@bakerlaw.com

Colby M. Everett (*Admission Forthcoming*)
1801 California Street, Suite 4400
Denver, Colorado 80202
Tel: (713) 646-1318
Fax: (713) 751-1717
Email: ceverett@bakerlaw.com


*Attorneys for Defendant*
*FARMERS UNION HOSPITAL ASSOCIATION*

## CERTIFICATE OF SERVICE

I hereby certify that on December 20th , 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/Larry D. Ottaway